## Kelly et al. v. General Finance Company.

*Francis F. Burch*, for plaintiff; *David S. Malis*, for defendant.

KUN, J., November 6, 1931.—The General Finance Company obtained a judgment against Claude B. Gilbert, and issued an attachment thereon, summoning the Philadelphia Saving Fund Society as garnishee, which answered that it had no funds deposited in the name of Claude B. Gilbert, defendant in the execution, but that it did have an account in the name of Mae Kelly, trustee for Claude B. Gilbert. Mae Kelly was permitted to intervene as claimant of the account.

At the trial, Mae Kelly testified that she opened her account that way, that it was her own money which went into the account and no part of it belonged to Gilbert, stated to be her cousin, and that she treated the account as her own, making withdrawals from time to time as well as deposits, and she still had the deposit book. Gilbert testified that he knew nothing about the account until this controversy arose—that he never gave any money to Mae Kelly to put into the account. There were no other proofs. The court directed a verdict for the claimant. The General Finance Company, defendant in the interpleader, contends the matter should have been submitted to a jury. With this the court cannot agree.

The question of the effect of a bank account in the form of the one in the instant case has been before the court several times, but it seems that in every case the controversy was between the personal representatives of the so-called trustee and the so-called *cestui que trust* or his personal representatives. Such a contest appears never to have come up before directly between the living parties. It has been said that where such a deposit was made and the depositor has not treated it as his own, as by making withdrawals from the fund or otherwise asserting a claim to it, and the depositor dies, the law will raise a presumption that a trust for the beneficiary named was intended. This is the explanation of the cases of Gaffney's Estate, 146 Pa. 49, and Merigan v. McGonigle, 205 Pa. 321. In the latter case there were deposits in the so-called trust account for a period of nearly nine years without any withdrawals. There was further evidence of declarations by the depositor that the money was the beneficiary's, and that it was deposited for her. The intention of the depositor in making it was held to be for the jury, although it seems that the matter might well have been disposed of as a matter of law, in view of the statement of the Supreme Court (page 327) that "there was not a particle of evidence to show that Mrs. Fitzgerald [the depositor] had made the deposit for any other purpose than that disclosed by the books of the bank." The other significant statement of the court is: "She [the depositor] lived ten years after she opened the account and expressed no desire to withdraw the money and apply it to her own use, and made no attempt to revoke the trust she had created for the appellee."

In a later case in which the deposit was in similar form it was held not to be the property of the so-called *cestui que trust* named, although the so-called trustee had died and there was no evidence that he had revoked the so-called trust in his lifetime, the reason being that the depositor, though he carried it in his name as trustee for the other named, treated the fund entirely as his own, making withdrawals therefrom and adding thereto at will: Rambo v. Pile, 220 Pa. 235. It was an incident in the case that the so-called beneficiary named in the account had predeceased the so-called trustee, but that can hardly be controlling because, if the beneficiary named had a legal claim to the fund because of the character of the deposit, the right would not be lost because of his death. It would pass to his personal representatives. The court denied them recovery. The court said (page 241) : "In the cases of this court, cited above [the same cases hereinabove cited], where a trust was sustained, it will be observed that the beneficiary was living at the death of the trustee, and that the account was not an active one but the deposits remained until the death of the trustee, except as they were augmented by interest. No checks were drawn in payment of the individual indebtedness of the trustee. No dominion or control was exercised by the depositor over the fund after it had reached the bank, but it remained there until his death. There were no contemporaneous facts or circumstances which disclosed a purpose

on the part of the depositor other than that shown by the form of the deposit. In the present case, however, exactly the opposite appears. There is nothing in it to show an intention on the part of the depositor to hold the fund in trust, except the form of the deposit. All the circumstances surrounding the deposit tend to establish the fact that the deposit was made with the intention, on the part of the depositor, of retaining the control and ownership of the fund in himself and that he did exercise absolute control over the fund from its inception until the date of his death." The court decided that the form of the deposit, "A in trust for B," had no legal effect in the circumstances, notwithstanding the depositor had died and the so-called trust was unrevoked.

Whatever claim or title to the fund the assumed beneficiary in the instant case might have in the event of the death of the depositor of it, the so-called trustee, it is clear to the court that there has been no gift *inter vivos* between Mae Kelly, the depositor, and Gilbert, the defendant in the execution, so as to vest in the latter any present title or right to the fund. The uncontroverted proofs in the case being that Mae Kelly made the deposit with her own money, retaining control of the account, making several withdrawals of funds therefrom, and treating the deposit as her own and no money of Gilbert going into the fund, Mae Kelly still retaining the pass book with the right to withdraw any part of the fund or all of it at will, and having in this proceeding made claim to the fund, there is no basis upon which the jury could have found the fund to be the property of Gilbert. Accordingly, it was the duty of the court to direct a verdict for the claimant. It may be added that the legal effect of a deposit in a form such as we have under consideration is that the form of it in the first instance indicates an intention on the part of the depositor to constitute himself trustee for the one named. If the depositor does not make withdrawals therefrom in his lifetime, but on the contrary adds thereto, either by more principal or the accumulations of interest, and dies, in those circumstances the deposit is held to be a trust in favor of the beneficiary named. However, if the depositor, notwithstanding the form of the deposit as indicated, treats it as his own by making withdrawals therefrom at will and uses it generally as his own, there is no trust implied from the mere form of the deposit. In either case, such a voluntary or gratuitous declaration of trust, where nothing more has been done by the trustee to give it binding effect, appears to be revocable at will. This is plainly indicated in Smith's Estate, 26 W. N. C. 364, 367, where it is said: "He did not revoke the trust during his lifetime, and at his death the title to the bonds clearly passed to the *cestui que trust*, the nephew;" and in Dickerson's Appeal, 19 W. N. C. 121, 127, the court said: "It follows from what has been said that the securities in question were subjects of valid trusts created by the testator in favor of his children prior to his decease, and having so continued, unrevoked by his will or otherwise, they should be treated as gifts *inter vivos*, and, therefore, no part of his personal estate at the time of his death."

The case before the court may be disposed of on the ground that, though the deposit is in form a trust deposit, it is in fact not so because the depositor has made withdrawals from time to time from her funds, treating it as her own; or if, notwithstanding her withdrawals, her deposit in the form made could be construed to be a declaration of trust in favor of the beneficiary named, she revokes it by her claim to it filed in this case.

Motion for new trial is dismissed.